UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANNE MCKEOGH, | |
| Plaintiff, | |
| v. | Case No: **1:21-cv-1730** |
| FIDELITY NATIONAL FINANCIAL, INC. and CHICAGO TITLE INSURANCE COMPANY | |
| Defendants. | **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff, Jeanne McKeogh, by and through her attorneys, Herschman Levison Hobfoll

PLLC, for her COMPLAINT against Defendants, the Fidelity National Financial, Inc., and

Chicago Title Insurance Company (collectively, "Defendants"), states as follows:

**NATURE OF ACTION**

1.      Defendants terminated Plaintiff almost immediately after notification that she was

admitted for treatment at an inpatient psychiatric care facility and less than three weeks after

notification that she was the victim of domestic abuse and subject to an judicial emergency order

of protection. Further, Plaintiff suffers from multiple disabling medical conditions. Defendants

were aware of Plaintiff's disabilities and failed to engage in the interactive process or provide

Plaintiff with reasonable accommodation in violation of Americans with Disabilities Act of 1990

("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count I).

Additionally, Defendants terminated Plaintiff because of her disability in violation of the

ADA/ADAAA (Count II).  In the alternative to Counts I and II, upon notification that Plaintiff

1

was admitted for treatment at an inpatient psychiatric care facility, Defendants perceived or regarded Plaintiff as having a disability or an impairment and terminated her because of that perception in violation of the ADA/ADAAA (Count III). Finally, Defendants' decision to terminate Plaintiff's employment was the result of unlawful retaliation, under the Illinois common law, in contravention of public policy protecting victims of domestic abuse in the workplace, and in response to Plaintiff's notification of her protected status and her need for protected medical leave (Count IV).

## JURISDICTION AND VENUE

1.      This court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA").

2.      The conduct and events described herein primarily took place in Chicago, Illinois. Accordingly, venue in the Eastern Division of the U.S. District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

3.      This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

## ADMINISTRATIVE PROCEDURE

4.      Plaintiff timely filed her Charge of Discrimination ("the Charge") against Defendants with the Equal Employment Opportunity Commission ("EEOC") on or about January 3, 2020, asserting unlawful acts of disability discrimination. See Exhibit A, the January 3, 2020, Charge of Discrimination.

2

5.     The EEOC issued a Notice of Suit Rights to Plaintiff, dated November 10, 2020. Plaintiff received a copy, via email from the EEOC, on December 2, 2020.  See Exhibit B, the Notice of Suit Rights.

6.     On February 4, 2021, before the expiration of the 90-day filing period specified in the Notice of Suit Rights, Plaintiff and Defendants entered into a Tolling Agreement in order to address to possibility of settlement.  The Tolling Agreement equitably tolled and extended the federal complaint filing period until April 8, 2021.  See Exhibit C, the Tolling Agreement, at ¶5.

7.     Parties were unable to reach an amicable resolution.

8.     The instant complaint is filed within the time frame agreed upon among the parties and pursuant to the terms of the Tolling Agreement.

9.     Plaintiff satisfied all conditions precedent to filing her ADA claims in a court of competent jurisdiction.

## PARTIES

10.     Plaintiff Jeanne McKeogh resides in Cook County, Illinois.

11.     Plaintiff suffers from alcoholism, substance abuse disorder, migraines, emotional trauma and anxiety.

12.     Plaintiff is a "Victim" of "Domestic Violence" as defined by the Victims' Economic Security and Safety Act (VESSA).  820 ILCS 180/10 (5) and (22).

13.     Defendant Fidelity National Financial, Inc. ("Fidelity") is a provider of title insurance and settlement services to the real estate and mortgage industries in the United States.

14.     Defendant Fidelity has thousands of employees.

15.     Fidelity is the parent corporation of the wholly owned subsidiary Defendant Company and Chicago Title Insurance Company ("CTIC").

3

16.    CTIC has thousands of employees.

17.    CTIC has an office located at 10 South LaSalle St. in Chicago, Illinois.

18.    On or about December 20, 2018, Defendants offered and Plaintiff accepted employment as a Construction Escrow Officer, at the CTIC office in Chicago, Illinois. The position was hourly. Defendants agreed to pay Plaintiff $34.50 an hour, for an estimated annual wage of $65,032.50 and opportunity to earn additional income through earned bonuses. Defendants also agreed to provide Plaintiff with health insurance benefits, three weeks paid vacation and five paid sick days, and other benefits.

19.    Fidelity set the work rules, policies, and conditions of employment for Plaintiff.

20.    Fidelity issued Plaintiff its employee handbook, setting forth Fidelity's employment policies applicable to the claims raised herein, including but not limited to: Equal Employment Opportunity, Workplace Rules, Attendance, Leave for Victims of Domestic Violence, and its Complaint Procedure which directed employees, like Plaintiff, to contact Fidelity's Vice President of Corporate Human Resources in Jacksonville, Florida or submit complaints online at the Fidelity website www.reportlineweb.com/fidelitynationalfinancial.

21.    Fidelity provided and issued Plaintiff's compensation and income tax reporting forms.

22.    Fidelity provided Plaintiff with benefits, including but not limited to medical and dental insurance.

23.    During the relevant time frame, Plaintiff's direct supervisor and manager was Brienne Berscheid, an attorney and AVP Construction Escrow Manager at the CTIC office.

24.    During the relevant time frame, the local Human Resources Coordinator at the CTIC office was Karen Graziano.

4

## FACTS COMMON TO ALL COUNTS

25.     In 2018, Plaintiff was involved in a physically and mentally abusive relationship with a man.  The abuse was extreme and violent, and Plaintiff regularly feared for her life.

26.     In 2019, despite breaking off the relationship with this man, the man continued to physically and emotionally abuse Plaintiff.  He began stalking Plaintiff and members of her family.

27.     On or about March 12, 2019, Plaintiff sent an email to Berscheid and advised that she suffered from migraines and anxiety and that she was experiencing in regular intervals.

28.     In the March 12, 2019 email, Plaintiff requested time off work to deal with the medical condition she described and Berscheid responded, "Not a problem. I understand. Take the time you need and keep me posted."

29.     On July 10, 2019, Plaintiff took time off work to go to court where she was granted an Emergency Order of Protection against the man who was abusing her and stalking her and members of her family.

30.     Also on July 10, 2019, Plaintiff sent an email to Berscheid and Graziano, advising of the entry of the Emergency Order of Protection, and that the Order covered all CTIC offices. The email included a copy of the Emergency Order of Protection.

31.     The Emergency Order of Protection also stated that Plaintiff was scheduled to return for another court hearing on the matter on July 31, 2019.

32.     In 2019, Plaintiff was in treatment with a mental health provider for alcoholism, anxiety, and the emotional trauma sustained as a result of the physically and emotionally abusive relationship.

33.     On Wednesday, July 24, 2019, Plaintiff notified Berscheid, via email, that she needed to take time off work to seek medical treatment.

34.     From about July 24th – 26th, 2019, Plaintiff suffered an intense relapse in alcohol abuse and an acute anxiety episode due to the mental trauma she sustained as a result of the physically and emotionally abusive relationship and fear that she would never be able to get away from the man who was stalking and abusing her and her family.

35.     Plaintiff was in crisis and, on Friday, July 26, 2019, her daughter took her to see her mental health provider for an emergency crisis session. Plaintiff's mental health provider recommended intensive psychiatric in-patient treatment and, while at the crisis session, Plaintiff's mental health provider contacted a treatment facility to initiate the inpatient treatment intake process.

36.     The next day, Saturday, July 27, 2019, Plaintiff was admitted to an out of state psychiatric inpatient treatment facility.

37.     On Monday, July 29, 2019, Berscheid was contacted by the out of state psychiatric inpatient treatment facility and advised that Plaintiff was admitted for inpatient treatment and that Plaintiff did not have access to phone, internet, or email. The treatment facility also requested leave of absence benefit information for Plaintiff from Berscheid.

38.     On Wednesday, July 31, 2019, Berscheid emailed treatment facility to confirm receipt of the July 29th notification about Plaintiff.   Berscheid also provided the requested information about Defendants' medical leave providers. In the course of this communication, Berscheid did not advise the treatment facility that Plaintiff's employment status had changed in any way.

39.     On Thursday, August 1, 2019, Berscheid sent another email to the treatment facility with information related to Defendants' Short Term Disability benefits administrators.  In the course of this communication, Berscheid did not advise the treatment facility that Plaintiff's employment status had changed in any way.

40.     On August 15, 2019, Plaintiff was discharged from the out of state psychiatric inpatient treatment facility, without completing the course of treatment and care services, due to "lack of insurance coverage."

41.     It turns out that while Plaintiff was attending out of state inpatient psychiatric treatment, Defendant sent Plaintiff written notification, via email and to her home in Illinois, that her employment was terminated and the termination cut off the insurance benefits provided by Defendants.

42.     The termination letter purports to be authored by Berscheid and bears the date of Tuesday, July 30, 2019.  July 30th was one day after Berscheid was contacted by the out of state in-patient psychiatric treatment facility and advised that Plaintiff was admitted for treatment and seeking medical and disability leave benefit information.

43.     Further, the termination letter explains that the decision to terminate Plaintiff, at least in part, was made because "[y]ou were not in the office yesterday or today, and it has come to our attention that you will not be returning to the office for several weeks."

44.     Based upon information and belief, it was the July 29th communication from the out of state in-patient psychiatric treatment facility which brought to Berscheid's "attention" that Plaintiff was receiving inpatient psychiatric medical treatment, was seeking medical leave, and therefore would "not be returning to the office for several weeks."

45.     The termination letter also listed a number of dates when Plaintiff was alleged to have been late or absent from "with an unexcused absence."

46.     The email Berscheid sent to Plaintiff attached the termination letter, Fidelity's 2019 Termination of Benefit Summary, and Fidelity Employee Separation forms, all executed by Berscheid.

47.     Until Plaintiff experienced the traumatic emotional psychological crisis that precipitated Defendants' decision to terminate, Plaintiff kept Berscheid apprised, via email and text message, of her work schedule, attendance, need for time off for medical treatment or health reasons, need for time off to obtain legal services to address domestic violence, and anticipated work arrival times.

48.     Once notified by Plaintiff, Berscheid responded with email messages affirming or inferring that attendance or need for time off was acceptable and not an issue.

49.     Berscheid's email responses to Plaintiff's attendance notifications included messages like "great" or "ok-thank you" or "Not a problem" or "Take the time you need and keep me posted" or "take the day off" or "thanks" or "Okay – keep me posted. Thanks!" or "Thanks for the update!" or "not a problem at all" or words of similar import and meaning.

50.     Prior to the traumatic emotional psychological crisis that precipitated Defendants' decision to terminate, Plaintiff was not advised by Berscheid , or anyone at Defendants, that her work attendance was at issue, or problematic in any way, or that she was in jeopardy of losing her job for any reason.

51.     According to Plaintiff's final paycheck from Defendants, at the time of termination, Plaintiff had over twenty-five hours of accrued and unused paid sick and vacation time available to her pursuant to Defendants' policies.

## COUNT I
### Disability Discrimination – Failure to Accommodate

52.    Plaintiff realleges and incorporates paragraphs 1- 51 of this Complaint by reference.

53.    The ADA/ADAAA requires employers, like Defendants, to provide reasonable accommodations to disabled employees.

54.    Plaintiff is a qualified individual with a disability under the ADA/ADAAA.

55.    Plaintiff's alcoholism, substance abuse disorder, migraines, emotional trauma and anxiety disorders interfere with her ability to sleep and work.

56.    Plaintiff was qualified and able to perform the essential functions of her job as a Construction Escrow Officer with reasonable accommodations.

57.    Defendants are "covered" employers as defined in 42 USC § 12111(5)(A) of the ADA/ADAAA.

58.    Defendants operated in multiple states, which affected commerce, and both have over 500 employees.

59.    At no time prior to the traumatic emotional psychological crisis that precipitated Defendants' decision to terminate Plaintiff's employment did Defendants indicate to Plaintiff that she was not meeting performance standards, or demonstrated any inability to perform essential job functions with or without accommodation, for her position as a Construction Escrow Officer.

60.    Defendants knew, or should have known, of Plaintiff's disabling conditions and need for reasonable accommodation.

61.    At least as early as March 12, 2019, Defendants, by virtue of Plaintiff's communications with Berscheid, were on notice of Plaintiff's medical condition as it related to

migraines, and anxiety and that Plaintiff sought the accommodation of flexibility in her work schedule to attend to and treat the migraines and anxiety.

62.   In response to Plaintiff's notification, Defendants, through communication by Berscheid, indicated recognition of the notification and approval and understanding of the request.

63.   No further engagement in any anything resembling an ADA/ADAAA mandated "interactive process" took place between Plaintiff and Defendants with respect to this March 12, 2019 notice.

64.   Thereafter, Defendants denied the accommodation and used the flexibility in scheduling, previously provided as an accommodation to Plaintiff, as a basis for her termination.

65.   In addition, on multiple occasions, from late July through early August of 2019, Defendants indicated its recognition of Plaintiff's efforts to obtain accommodation, in the form of time off of work to receive psychiatric treatment, by communicating with the out of state inpatient psychiatric care facility.

66.   During the July and August 2019 time period, Defendants made no effort engage in the interactive process, or provide any accommodation to Plaintiff, after learning of Plaintiff's admittance into an out of state inpatient psychiatric care facility, nor the request for reasonable accommodation in the form of time off from work to receive treatment.

67.   Plaintiff would have been able to continue performing her job if Defendants had continued to reasonably accommodate her by affording her additional time off work and/or work schedule flexibility.

68.   The accommodations sought by Plaintiff were reasonable and did not impose any undue or unreasonable hardship upon Defendants.

69.   Defendants failed to engage in the interactive process or to provide reasonable accommodations for Plaintiff in violation of the ADA/ADAAA.

70.   Defendants intentionally, with malice and reckless indifference of Plaintiff's rights, violated the ADA by refusing to accommodate her disability and terminating her, despite knowing that the ADA required such accommodations.

71.   Defendants' discriminatory conduct has caused and continues to cause the Plaintiff to suffer monetary loss, as well as substantial physical and mental/emotional distress and inconvenience.

<u>**COUNT II**</u>
**Disability Discrimination: Termination**

72.   Plaintiff realleges and incorporates paragraphs 1- 51 of this Complaint by reference.

73.   The ADA/ADAAA prohibits employers, like Defendants, from taking adverse employment actions against their employees, like Plaintiff, because of disability.

74.   Plaintiff is a qualified individual with a disability under the ADA and the ADAAA.

75.   Plaintiff's alcoholism, substance abuse disorder, migraines, emotional trauma, and anxiety disorder interfere with her ability to sleep and work.

76.   Defendants are "covered" employers as defined in 42 USC § 12111(5)(A) of the ADA.

77.   Defendants operated in multiple states, which affected commerce, and both had over 500 employees at all relevant times.

78.   Defendants knew, or should have known, of Plaintiff's disabling conditions of migraines, trauma and anxiety.

79. Within hours of receiving notification that Plaintiff was admitted and receiving related medical treatment at an out of state inpatient psychiatric care facility, Defendants terminated Plaintiff's employment.

80. Based upon information and belief, after terminating Plaintiff, Defendants hired another person to be a Construction Escrow Officer and that person was not disabled.

81. Defendants terminated Plaintiff because of her disability, in violation of the ADA/ADAAA.

82. Defendants intentionally, with malice and reckless indifference of Plaintiff's rights, violated the ADA/ADAAA by terminating her.

83. Defendants' discriminatory conduct has caused and continues to cause the Plaintiff to suffer monetary losses as well as substantial physical and mental/emotional distress and inconvenience.

## COUNT III
### (Plead in the alternative to Counts I and II)
### Perceived or "Regarded as" Disability Discrimination: Termination

84. Plaintiff realleges and incorporates paragraphs 1- 51 of this Complaint by reference.

85. The ADA/ADAAA makes it unlawful for employers, like Defendants, to subject employees, like Plaintiff, to an adverse employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

86. Defendants are "covered" employers as defined in 42 USC § 12111(5)(A) of the ADA/ADAAA.

87.     Defendants operated in multiple states, which affected commerce, and had over 500 employees at all relevant times.

88.     After receiving notification from the out of state inpatient psychiatric care facility that Plaintiff was admitted for treatment and need of a medical leave of absence, Defendants perceived Plaintiff as having a disability.

89.     Plaintiff was qualified and able to perform the essential functions of her job as a Construction Escrow Officer.

90.     Nevertheless, within hours of the notification that Plaintiff was receiving inpatient medical treatment at a psychiatric care facility, Defendants terminated Plaintiff's employment.

91.     Based upon information and belief, after terminating Plaintiff, Defendants hired another person to be a Construction Escrow Officer and that person was not disabled.

92.     Defendants terminated Plaintiff because they perceived her or regarded her as having a disability or impairment, in violation of the ADA/ADAAA.

93.     Defendants intentionally, with malice and reckless indifference of Plaintiff's rights, violated the ADA by terminating her.

94.     Defendants' discriminatory conduct has caused and continues to cause the Plaintiff to suffer to suffer monetary losses as well substantial physical and mental/emotional distress and inconvenience.

## COUNT IV
### Common Law Retaliatory Discharge

95.     Plaintiff realleges and incorporates paragraphs 1- 51 of this Complaint by reference.

96.     The Illinois Victims' Economic Security and Safety Act ("VESSA"), prohibits employers from discharging, constructively discharging, harassing or otherwise discriminating

against any employee, who is the victim of domestic violence, with respect to compensation, terms, conditions, or privileges of employment, or retaliating against an employee in any form or manner. 820 ILCS 180/1 et. seq.

97.     VESSA codifies Illinois' clearly mandated public policy to protect victims of domestic abuse from discrimination and retaliation in the workplace when in need of time off to seek legal and/or medical assistance related to the domestic abuse. 820 ILCS 180/5.

98.     VESSA requires advanced notification of an employee's intention to take leave *except* in such cases where it is not practicable to provide such notice. 820 ILCS 180/20.

99.     Pursuant to VESSA, if an unscheduled absence occurs, "the employer may not take any action against the employee if the employee, upon request of the employer and within a reasonable period after the absence, provides certification." *Id*.

100.    On July 10, 2019, Plaintiff provided an express written notification to Defendants of her protected status under VESSA and need for protected leave to attend related legal proceedings.

101.    In late July of 2019, Plaintiff needed unscheduled emergency time off work to receive medical treatment and counseling related to her protected status as a victim of domestic abuse.

102.    Due to the extreme and unpredictable nature of the mental and emotional crisis Plaintiff experienced, it was not practicable for Plaintiff to provided Defendant with advance notice of her need for time off.

103.    On July 26, 2019, Plaintiff attempted to notify her supervisor of her need for immediate and emergency time off to seek medical assistance related to the domestic violence. Due to technological issues, this attempted notification did not reach the supervisor.

104. On July 29, 2019, Plaintiff, through her medical providers, notified Defendants of Plaintiff's emergency and unscheduled need to take leave to seek medical assistance, at the out of state facility.

105. This emergency medical leave was protected by VESSA.

106. Despite this notification, Defendants did not request, nor provide Plaintiff with the opportunity to provide, certification that the medical leave sought was protected by VESSA.

107. To the contrary, just hours after receiving notification that Plaintiff required medical leave at an out of state psychiatric care facility, Defendants emailed Plaintiff, and sent notice of termination to her home, where Defendants knew or should have known that Plaintiff would not receive and could not address or respond to the notification.

108. Defendants' July 30, 2019, termination letter affirms that VESSA protected leave (on July 10, 2019) was at least part of the basis for the decision to terminate. Moreover, the termination letter makes reference to Defendants' knowledge that Plaintiff needed and/or was seeking a medical leave. The termination letter states, "it has come to our attention that you will not be returning to the office for several weeks."

109. Defendant's decision to terminate Plaintiff was a retaliatory response to Plaintiff's protected activity, vis-à-vis her notification of her status as a victim of domestic violence and her need for protected leave for legal and medical reasons related to the domestic violence.

110. The termination violates the clearly mandated Illinois public policy protecting victims of domestic violence in the workplace, as articulated in VESSA.

111. Defendants intentionally, with malice and reckless indifference of Plaintiff's rights, violated the Illinois common law by terminating Plaintiff, despite knowing of her protected

status and need for protected leave for legal and medical reasons related to the domestic violence.

112. Defendants' retaliatory conduct has caused and continues to cause the Plaintiff to suffer monetary losses as well as substantial physical and mental/emotional distress and inconvenience.

## **CLAIM FOR RELIEF**

Wherefore, Plaintiff Jeanne McKeogh seeks the following relief:

a. A declaration that her rights, under the ADA/ADAAA and Illinois common law, were violated;

b. Any actual monetary losses, including back pay, sustained by the Plaintiff as a direct result of the violations;

c. Pre-judgement interest;

d. Restoration and make-whole relief for the loss of any employment benefits or other compensation denied or lost by the Plaintiff;

e. Reinstatement with seniority and any promotional opportunities she would have had but for the discriminatory conduct, or front pay, if reinstatement is not available;

f. An Order prohibiting the Defendants from any further prohibited discriminatory or retaliatory actions against Plaintiff or their other employees;

g. Compensatory damages;

h. Emotional distress damages because of the past and future psychological, physical and mental pain, emotional distress and inconvenience;

i. Punitive damages because Defendants acted with malice and reckless indifference of Plaintiff's rights;

j. Attorney fees, litigation expenses and costs incurred in obtaining relief and pursuing this action;

k. Post judgment interest; and

l. Any other relief the court deems just and proper.

Elissa Hobfoll                                    Respectfully Submitted,
ARDC no. 6286410
**Herschman Levison Hobfoll PLLC**                JEANNE MCKEOGH
401 S. LaSalle Street, Suite 1302-G
Chicago, IL 60605                                 /s/ Elissa Hobfoll
(312) 870-5800                                    Attorney for Plaintiff
elissa@hlhlawyers.com



**EXHIBIT A**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **440-2019-07709** |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| JEANNE MCKEOGH | (312) 889-2033 | 1971 |

| Street Address | City, State and ZIP Code |
|---|---|
| 100 BELLE PLAINE AVE., #1, PARK RIDGE, IL 60068 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| FIDELITY NATIONAL FINANCIAL D/B/A CHICAGO TITLE | 501+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| 10 SOUTH LASALLE STREET, CHICAGO, IL 60603 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **07-30-2019**  Latest: **07-30-2019**

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on or about January 9, 2019. My most recent position was Construction Escrow Officer. Respondent became aware of my disability. Subsequently, I was discharged.

I believe I was discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Jeanne Mckeogh on 01-03-2020 03:08 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

EXHIBIT B

| To: Jeanne M. McKeogh<br>6618 N Northwest Hwy., #2<br>Chicago, IL 60631 | From: Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|

| [ ] | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2019-07709 | **Gregory T. Mucha,**<br>**Investigator** | **(312) 872-9686** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowma/np*

**Julianne Bowman,**
**District Director**

November 10, 2020

*(Date Mailed)*

Enclosures(s)

cc: **FIDELITY NATIONAL FINANCIAL d/b/a CHICAGO TITLE**
**c/o Kelly D. Feese, Esq.**
**Fidelity National Title Group, Inc.**
**350 Fifth Ave., Suite 3000**
**New York, NY 101080**

Enclosure with EEOC
Form 161 (11/16)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- ➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- ➢ **Only one** major life activity need be substantially limited.
- ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
- ➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT   C

## Tolling Agreement

Jeanne McKeogh ("McKeogh"), Fidelity National Financial, Inc., and Chicago Title Insurance Company (collectively the "Companies"), through their respective attorneys, agree as follows:

1.      The date of this Tolling Agreement is February ___, 2021.

2.      The Parties are entering into this Tolling Agreement to attempt to settle McKeogh's claims against the Companies before the filing of any lawsuit based upon McKeogh's EEOC Charge Number 440-2019-07709, for which a "Right To Sue" notice was issued on November 10, 2020.

3.      Nothing in this Tolling Agreement is to be taken as an admission on the part of the Companies that they or any of their agents are liable to McKeogh nor that they did anything incorrect, wrong, or illegal, nor is anything in this Tolling Agreement to be taken as an admission on the part of McKeogh that her allegations are incorrect or untruthful.

4.      Nothing in this Tolling Agreement is to be taken as an admission on the part of the Companies that either are an "employer" as defined by 42 U.S. Code § 12111(5) or other state and federal law.

5.      McKeogh shall have until April 8, 2021 to file a lawsuit against the Companies regardless of the earlier expiration of ninety days following McKeogh's receipt of the notice of Right to Sue.

6.      This Tolling Agreement may be extended or otherwise modified only in writing by the Parties or their representatives and any agreements to extend via e-mails shall be deemed sufficient.

7.      Nothing in this Agreement constitutes an agreement, stipulation, or admission by any Party that any particular statute of limitations applies to McKeogh's claim, that the statute of limitations for that claim will expire on any particular date, or that the statute of limitations for that claim would have expired but for this Agreement.

8.      The signatory of this Tolling Agreement on behalf of McKeogh and the signatory of this Tolling Agreement on behalf of the Companies represent that they are an attorney for that party and has the authority to sign this Agreement on behalf of that party.

9.      In addition, the Parties and their counsel further agree that all oral and written statements while the Tolling Agreement is in effect are privileged settlement discussions and are made without prejudice to any Party's legal position and are inadmissible for any purpose in any legal

proceedings. These offers, promises, conduct and statements will not be disclosed to third parties, and are privileged and inadmissible for any purposes, including impeachment, under Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule or common law provisions.

10.    This Tolling Agreement shall be governed by and construed and enforced in accordance with laws of the State of Illinois.

11.    This Tolling Agreement may be signed in counterparts, which together shall constitute the original. Faxed and/or scanned-and-emailed signatures shall be acceptable as originals.

Dated: February 4, 2021

By: _____

Elissa Hobfoll
Attorney for Jeanne McKeogh

By: _____

Kelly Feese
Attorney for Chicago Title
Insurance Company and
Fidelity National Financial,
Inc.